THE MEMPHIS, KANSAS & COLORADO RAILWAY COMPANY V. WILLIAM KOCH.

AGENCY; *Finding Sustained; Notice.* In an action brought by K. against the M. K. & C. railway company for labor performed by M. for the railway company, it was shown that M. had a valid claim against the railway company for labor performed by him; that he sold the claim to K.; and that K. gave notice to H., who was agent for the railway company, of his, K.'s, purchase of the claim, and demanded that H. should pay the debt to him, K. The evidence introduced on the trial also tended to show that H. was in charge of the depot and business of the railway company at Parsons; that he was the only agent of the company stationed in Labette county, and that the company had no general office in Kansas, except at Parsons; and also, that H. paid the employés of the railway company. The evidence also tended to show that afterward H. paid the claim to M., instead of to K. *Held,* That the evidence was sufficient to authorize the trial court to find as it did, that H. was such an agent of the railway company that notice to him by K. of the purchase of the claim by K. from M. was a sufficient notice of such purchase to the railway company.

*Error from Labette District Court.*

AT the February Term, 1882, of the district court, plaintiff *Koch* recovered a judgment against the *Railway Company,* which brings the case here. The opinion states the facts.

*Blair & Perry,* for plaintiff in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by William Koch against the Memphis, Kansas & Colorado railway company, for labor performed by Patrick Monroe for the railway company in the month of August, 1880. The judgment in the court below was in favor of Koch and against the railway company, for the amount of the claim ($34.80), and costs; and the railway company now asks to have such judgment reversed.

It appears from the evidence that the claim of Monroe against the railway company was a valid and subsisting one;

that Koch purchased the same from Monroe, and took a power of attorney from Monroe authorizing Koch to collect the claim from the railway company. It also appears that Koch gave notice to H. H. Henderson, an agent of the railway company at Parsons, Kas., of Koch's purchase of the claim from Monroe, and also of his possession of the power of attorney to collect the claim. Afterward, Henderson paid the debt to Monroe, and he, as well as the railway company, then refused to pay the debt to Koch, who then commenced this action for the recovery of the debt.

The only question now to be considered is, whether the notice given by Koch to Henderson of his (Koch's) purchase of the claim from Monroe was a sufficient notice of the same to the railway company. In other words, was Henderson such an agent of the railway company that such a notice would bind the company? The evidence with respect to this question, or so much of it as is necessary to refer to, is as follows. Koch testified in his own behalf, and stated, among other things, as follows:

"I took the power of attorney down to H. H. Henderson. He has charge of the depot and business of the company here in Parsons. He is the only agent stationed in this county. They have no general office in this state, except this. Mr. Henderson paid off the men (the same as Pat. Monroe) with the checks of the company. The men who were building the road went to Mr. Henderson and got their pay on pay-day. On the morning of the ninth of September, I handed this power of attorney to Mr. Henderson and asked him to make the payment to me instead of to Mr. Monroe. He said: 'The checks for the payment of the men hadn't come yet.' He said I had better send the check up to the paymaster at Kansas City, so that they might make out the check to me instead of to Monroe. 'I will try and do so,' I said, 'but will see my attorney, Mr. Ayres, first; and I want you to be sure and hold the check for me if it comes.' He said, 'Yes, sir, all right.'"

Koch also testified that in a subsequent interview between these same parties, Henderson said that "he had already received the check and handed it over to Monroe."

A. H. Ayres, the plaintiff's attorney, also testified that at a conversation had between himself and Henderson and Koch, prior to the payment of said claim, Koch requested Henderson to deliver the check only to the plaintiff, if sent to him (Henderson); and that he (Ayres) understood Henderson to promise so to do. And Ayres further testified that after Henderson had paid Monroe that "he then stated that he had given the check to Monroe because he [Henderson] had learned that part of the pay that Koch had given for it was beer." This was substantially all the evidence upon this subject that was introduced on the trial. On the hearing of a motion for a new trial, however, made by the railway company, W. C. Perry, one of the attorneys for the railway company, filed his affidavit, stating among other things, "that he [Henderson] paid the money to the principal instead of to the attorney." A. H. Ayres also filed his affidavit upon the hearing of this same motion, which affidavit stated among other things, that after the debt had been paid to Monroe instead of to Koch, that Ayres asked Henderson "why he had done so with full notice of Koch's claim, to which he replied that he had not respected Koch's claim or his power of attorney, because he had learned that Koch had bought Monroe's time by paying him in part with beer, and he did not propose to sanction such practices with their men."

Upon the foregoing evidence introduced on the trial, the court below found in favor of the plaintiff and against the defendant, and therefore necessarily found that Henderson was such an agent of the railway company that notice to him of the purchase of the claim by Koch from Monroe was a sufficient notice to the railway company. Upon this same evidence, and upon the affidavits filed by the respective parties, the court below overruled the defendant's motion for a new trial, and therefore must have held and found in overruling such motion the very same thing which it found and held upon the evidence introduced upon the trial. We think the evidence introduced upon the trial was sufficient to authorize the finding of the court below; and such evidence and the

said affidavits were sufficient to authorize the action of the court below in overruling the defendant's motion for a new trial; or least the evidence was not so utterly insufficient as to authorize this court to set aside the finding and ruling of the court below and to grant a new trial.

From the evidence introduced on the trial, it appears that Henderson was in charge of the depot and "business" of the railway company at Parsons; that he was the only agent of the company stationed in Labette county; and that the company has no general office in this state except at Parsons. It also appears that Henderson "paid off" the employés of the company with checks, and that such employés received "their pay on pay-day" from Henderson; and Henderson paid the debt to Monroe instead of Koch, because, as Henderson believed, a portion of the consideration which passed from Koch to Monroe, and which induced Monroe to transfer his claim to Koch, was nothing but that supposed worthless article of drink usually denominated "beer."

Of course the evidence is not very satisfactory. It would seem that Henderson made the payments with checks of the company, and it does not appear clearly who paid these checks; but probably there is sufficient evidence from which it may be inferred that Henderson also paid the checks. The attorney for the railway company stated in his affidavit "that he [Henderson] paid the money to the principal [Monroe] instead of to the attorney" (Koch), etc. There is no evidence showing that Henderson did not pay the checks; and some of the evidence would seem to indicate that he did pay them. Probably, however, that makes but very little difference; for whether Henderson's agency was of a comprehensive character or very limited, it would still seem from the evidence that his agency was the most comprehensive and general of any agent of the railway company in Kansas; that he had power to pay all the employés of the railway company with checks, and that he had a discretion, to some extent at least, in delivering these checks; and as he delivered the check to Monroe after he had full notice of the claim of Koch, it

would seem that the company should be held responsible. Of course we are not very well satisfied with the evidence upon this point. It is somewhat doubtful whether it shows a sufficiently comprehensive agency on the part of Henderson to make his knowledge of Koch's claim binding upon the railway company; but still the evidence is of such a character, though weak and inconclusive, that we do not think that we would be warranted in overturning the finding and ruling of the court below, and in reversing its judgment, for no other reason than that such finding, ruling and judgment are not supported by sufficient evidence. The judgment of the court below will therefore be affirmed.

All the Justices concurring.